## MAKEPEACE *v.* BRONNENBERG ET AL.

[No. 17,365.   Filed November 24, 1896.]

GUARDIAN AND WARD.—*Habitual Drunkard.*—*Limitation of Action.*—*Statute Construed.*—A habitual drunkard under guardianship is not under legal disability within the meaning of section 297, Burns' R. S. 1894.

SAME.—*Habitual Drunkard.*—*Discharge of Guardian.*—*Presumption.*—The discharge of a guardian appointed for a habitual drunkard will be presumed to be the result of a finding in accordance with section 5745, Burns' R. S. 1894, that the ward had reformed by abstaining from the use of intoxicating liquors.

SAME.—*Habitual Drunkard.*—*Powers and Duties of Guardian.*—The guardian of a habitual drunkard is invested with all the powers of a guardian of a minor, and under the provisions of section 2685, Burns' R. S. 1894, it is his duty to appear and defend all suits against his ward.

APPEAL AND ERROR.—*Bill of Exceptions.*—A bill of exceptions must be signed by the judge before it is filed with the clerk.

From the Henry Circuit Court.   *Affirmed.*

*F. A. Walker, J. N. Templer, R. S. Gregory, A. C. Silverberg, W. A. Brown* and *James Brown,* for appellant.

*M. E. Forkner, H. D. Thompson, H. C. Ryan, J. W. Layne* and *E. E. Hendee,* for appellees.

JORDAN, C. J.—This action was commenced by appellant in the Madison Circuit Court, and on motion the cause was venued to the Henry Circuit Court.

By the first paragraph of the complaint appellant sought to quiet his title to the real estate therein described. The second, alleged a cause of action in ejectment, and demanded possession of the land in controversy and damages for its detention. The fourth paragraph is quite lengthy and is replete with numerous charges of fraud, etc. It alleges, among other things, that Allen Q. Makepeace, the appellant, from 1870 to 1889, was a habitual drunkard, incapable of transacting any business; that in the year of 1874, the court, upon the finding of such facts, appointed a guardian for him; that he continued under such guardianship until 1889, in which year the guardian was discharged. After averring that in 1871 appellant became the owner of a large amount of property, both real and personal, by descent from his deceased father, which property, it is alleged, was of the probable value of $200,000.00, this paragraph then proceeds to assail several judgments and decrees of the circuit court of Madison county, Indiana, under and through which the appellees, it is alleged, claim title to the real estate mentioned in the complaint. This paragraph in question seeks to attack the proceedings of the court and the title of appellant to the real estate upon the ground of fraud on the part of one Edgar Henderson, through whom appellees claim to be the owners of the lands in dispute. It also charges that through the fraudulent designs and acts of said Henderson the guardian of appellant was procured to commence an action for his said ward in the Madison

Circuit Court against said Henderson and his wife, Eliza C. Henderson, to recover the land now in controversy, and that such fraud was perpetrated upon the court in said action; that said defendants, upon a cross-complaint filed by them, making the appellant and his guardian adverse parties thereto, secured a judgment quieting their title to the real estate in question. Knowledge of the alleged fraud is, by the averments of the pleading, imputed to the appellee, Bronnenberg, at the time Eliza Henderson sold the land to him. The paragraph closes with a prayer that the conveyances set forth, together with all judgments and decrees of the court upon which the same rest, be set aside and adjudged null and void, and the plaintiff's title be quieted, and a commissioner be appointed by the court to convey the land to plaintiff. Appellees, Henry Bronnenberg and Eliza C. Henderson, each separately answered the complaint by a general denial, and by other paragraphs setting up affirmative matter. These answers substantially aver the same facts, and a determination of the questions raised as to one will be decisive of those relating to the other.

The fourth paragraph of appellee, Bronnenberg's, answer was addressed to the first and fourth paragraphs of the complaint, and it was therein alleged that the cause of action set out and stated in each of said paragraphs did not accrue within fifteen years before the commencement of the action. A demurrer was overruled to this paragraph, and counsel for appellant insist that in this the court erred. They say, especially, that this was error so far as the answer was intended as a denfense to the fourth paragraph of the complaint, for the reason urged that the facts in the latter disclose that appellant, at the time the cause of action arose, was under a legal disability; a guardian

having been by the court appointed for him by reason of the fact that he was a habitual drunkard. Section 297, Burns' R. S. 1894, provides that "Any person being under legal disabilities when the cause of action accrues, may bring his action within two years after the disability is removed." By section 1309, Burns' R. S. 1894 (1285, R. S. 1881), the legislature defined the phrase "under legal disabilities" as including infants, persons of unsound mind, or those imprisoned in the State prison or out of the United States. Habitual drunkards are not embraced or included within this provision of the statute.

Again, it appears that this action was not commenced until 1893, and it is shown by the fourth paragraph of the complaint that the court discharged appellant's guardian in 1889. The discharge of the guardian, we must presume, was the result of the court finding under and in acordance with section 5745, Burns' R. S. 1894 (4320, R. S. 1881), relating to habitual drunkards, that the ward had reformed by abstaining from the use of intoxicating liquors. It appears that over three years had elapsed after the removal of the alleged disability upon which counsel base their contention, before this action was instituted; hence, if we were to concede counsel's insistence to be correct, it would follow that appellant has not brought himself within the two years' limit provided by section 297, *supra.*

Appellant also insists that the sixth paragraph of appellee's answer is insufficient. The facts therein averred, in substance, appear to be as follows: That on January 5, 1878, one Edgar Henderson became the owner of the real estate in controversy by virtue of a sheriff's sale had upon certain judgments rendered in the Madison Circuit Court, on Novemeber 1, 1873, against the appellant, and in favor of the First Na-

Makepeace *v.* Bronnenberg *et al.*

tional Bank of Anderson, Indiana; that on October 16, 1882, appellant, by Solomon Myers, his guardian, commenced an action in ejectment for the recovery of the real estate in question, in the Madison Circuit Court, against Edgar Henderson and Eliza C., his wife, who were then the owners and in possession of said real estate; that said defendants filed a general denial in said action, as their answer, and said Eliza C. Henderson, who had become the owner of the lands by a conveyance from her said husband, filed, on January 5, 1883, her cross-complaint therein against appellant, wherein she alleged that she was the owner of the land, and asked to have her title quieted; that appellant, by his said guardian, filed a general denial to said cross-complaint, and on the 15th day of January, 1883, such proceedings were had thereon in said action, which upon a trial resulted in the court adjudging that appellant had no title to the land now in question, and in decreeing that Mrs. Henderson's title to the same be quieted. That all questions relating to the title of said real estate were, in said action, fully and finally adjudicated between appellant and said Henderson, and appellant has acquired no other title since the rendition of said judgment. It is further averred that appellee, Bronnenberg, relying upon said decree, and upon the faith thereof, purchased the land in dispute from said Eliza C. Henderson and paid her for the same a full and valuable consideration; that after all disabilities under which appellant labored had been removed, he executed to Bronnenberg a deed of conveyance for said land.

The objections urged to this paragraph are that the guardian of appellant was not, under the law, authorized to commence an action for the recovery of his ward's lands.

It is not necessary for us to consider this question,

as it is shown from the alleged facts that the decree quieting the title of Mrs. Henderson, through whom appellee claims to have become the owner of the land, was rendered upon her cross-complaint, which made the appellant a party defendant thereto. To this cross-action his guardian seems to have appeared and filed an answer in behalf of his ward. By section 1 of the statute providing for the appointment of a guardian for a habitual drunkard—section 5743, Burns R. S. 1894—such guardian is invested with all the powers and duties of a guardian of a minor. Clause 5 of section 2685, Burns' R. S. 1894, makes it the duty of such latter guardian to appear and defend all suits against his 'ward; and in the event he does, it is not necessary for the court to appoint a guardian *ad litem* for the ward. *Hughes* v. *Sellers*, 34 Ind. 337; *Garrigus* v. *Ellis*, 95 Ind. 598. See *Jones* v. *Crowell*, 143 Ind. 218.

Appellant's guardian being empowered by the statute to appear and defend all suits brought against his ward, and having appeared in behalf of the latter, and defended the suit to quiet title, instituted by the cross-complaint of Mrs. Henderson, the appellant is bound by the decree rendered, and is thereby precluded, under the circumstances, from asserting any adverse interest or title to the land against the appellee. Consequently, the facts alleged in the paragraph in question discloses a complete defense to the cause of action as alleged in the complaint, and the court did not err in overruling the demurrer to this paragraph of the answer.

At the close of the evidence the court instructed the jury to return a verdict for the defendants. Questions relating to this latter ruling, and also others depending upon the evidence, are discussed and urged for our determination by the learned counsel for appellant. These questions, however, we cannot consider, for the

reason that the evidence is not in the record. Time was granted by the court for the filing of bills of exceptions. The transcript shows that what purported to be a bill of exceptions, embracing the evidence and the instructions given and refused by the court, was filed on May 22, 1894. This bill, it appears, did not receive the signature of the trial judge until June 20, 1894, and there is nothing to show that it was ever filed on or after this latter date. It is therefore manifest, so far as the record discloses, that the only filing of the bill in question occurred May 22, 1894, nearly a month before it was signed by the judge. The settling and signing of a bill of exceptions is a judicial act, and in the absence of the judge's signature it can have no existence or validity. After it has received his signature it must be filed in order to become a part of the record. It follows, therefore, that the bill, for the reasons stated, is not in the record and serves no purpose in this appeal.

There being no available error, the judgment is affirmed.